## McADAMS et al. v. C. D. SHAMBURGER LUMBER CO.

No. 15392—Opinion Filed Oct. 6, 1925.

1. **Judgment—Vacation of Default—Insufficiency of Record and Evidence.**

Where a default judgment is rendered

against a defendant and execution is issued on such judgment and defendant files his motion to recall such execution upon the ground that the court had vacated the judgment and granted defendant leave to file an answer, and the record is silent as to any order of the court vacating such record, and the judge who gave the default judgment has no recollection of making an order vacating such judgment, a verified motion of the defendant seeking to recall execution issued on such judgment, stating the judge did make such order, is insufficient to recall such execution and order of sale thereon.

**2. Same—Correction of Records.**

The court wherein a judgment is entered, in furtherance of justice and for the purpose of making its records speak the truth, may proceed to correct the same on any evidence satisfactory to itself, whether oral or documentary, record or otherwise, and it is for the court to say what kind and amount of evidence is requisite to show that the amendment should be made, but where the question is whether or not a certain order vacating a judgment was made, that fact must be established by record evidence and cannot be proved by parol.

**3. Same.**

Record examined, and held: The evidence introduced was insufficient to sustain a motion to recall execution, upon the grounds stated therein.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Stephens County; M. W. Pugh, Judge.

The C. D. Shamburger Lumber Company filed its action against J. J. and Janie McAdams to recover on a certain promissory note. Defendants defaulted in answering and judgment was rendered for plaintiff and execution issued. From an order of the court overruling the defendants' motion to "withdraw and quash the execution," defendants appeal. Affirmed.

H. M. Carr, for plaintiffs in error.

Sandlin & Winans, for defendant in error.

Opinion by RUTH, C. The parties will be designated as plaintiff and defendants, as they appeared in the trial court.

On March 5, 1923, the plaintiff filed its action against the defendants and prayed judgment on a certain promissory note in the principal sum of $1,323.35, with interest at the rate of 10% per annum and 10% attorney's fees. Answer was due April 4, 1923, but defendants defaulted, and on April 5, 1923, judgment was rendered in favor of plaintiff.

On April 12, 1923, defendants filed an unverified answer, consisting of a general denial. This answer was never verified until December 13, 1923, and the answer does not disclose it was filed by leave of the court.

On April 16, 1923, execution was issued, certain property was duly levied upon, and the date of sale set for June 4, 1923, at ten o'clock a. m., at which time counsel for defendants appeared and notified the prospective bidders that the plaintiff had no judgment and the defendants had an answer on file in the case. No bids being received, the sheriff made his return to the court.

No further action was taken until October 22, 1923, when an alias execution was issued and levied against certain personal property of defendants, and the sale of the property was set for November 14, 1923 on which said date one of the attorneys for defendants filed a verified motion to recall the execution and order of sale, alleging counsel "did on April 12, 1923, appear in open court in Stephens county and move the court to vacate the default judgment rendered on April 5, 1923, and the court sustained the motion, and granted leave to file answer on behalf of defendants."

Neither the minutes of the court clerk nor the appearance docket discloses any motion to vacate filed, or any order of the court vacating the judgment, and it is now admitted there is no such record, and that counsel could not have appeared in open court on April 12, 1923 the date upon which he alleges he filed his answer, as the court adjourned on April 9, 1923, until April 16, 1923.

Upon counsel's verified motion, of November 22, 1923, the court ordered a "stay of sale under execution" until November 29, 1923, or until the motion could be heard and determined. The hearing on the motion was had on December 12, 1923, at which time counsel for defendants again filed his verified "motion to recall execution," wherein it was recited that counsel appeared before Cham Jones, judge of the district court for Stephens county, a few days after the default judgment was rendered, and the said Cham Jones made an order vacating the default judgment and granted defendants leave to file an answer instanter, and the answer was filed on April 12, 1923. It appears that Cham Jones resigned as district judge about April 15, 1923. Plaintiff

filed its response to the motion and pleads the record. Over the objection of the plaintiff, the defendants introduced a letter from former District Judge Cham Jones, directed to his successor, Judge Pugh, as follows:

"Supreme Court Commission, State of Oklahoma.

"Oklahoma City, Okla., Nov. 16, 1923.

"Cham Jones, Commissioner, Division No. 3.

"Judge M. Pugh,

"Marlow, Oklahoma.

"Dear Judge: At the request of Mr. Henry Carr, I am writing you concerning matter which I understand is pending in your court relative to default judgment rendered by me some time before my resignation, against Jeff McAdams. I haven't a distinct recollection of all that occurred, but I do recall that Mr. Carr came over to Duncan a few days after the judgment was rendered, and called the matter up, and I recall that Mr. Carr called my attention to the fact that he represented McAdams in all his cases, and I knew that he had several cases on the docket at that time. I do not recall what order, if any, I made, but judging from my practice in dealing with default judgments I feel reasonably certain that I set the default aside. I do not recall to have ever refused to have set aside a default judgment where the parties defaulting appeared within a few days thereafter and asked for it, and was ready to file his answer and proceed with the trial. Trusting that this may be of some service to you and will do no injustice to any one, I beg to remain, Yours very truly, Cham Jones."

The defendants then called the court clerk, who testified that while the record showed an answer was filed on April 12, 1923, the record was silent as to any order vacating the judgment of April 5, 1923, or of leave having been given defendants to file an answer, and she did not recall ever having filed an answer after judgment rendered unless the judgment had been vacated. She further testified Cham Jones never held court after April 9, 1923, but that she had only been clerk of the court since January, 1923. She further testified that after counsel for defendants filed his answer in April, 1923, counsel put the answer in his pocket and the same was never produced and plaintiff's counsel never saw the same until this motion was called in November or December, 1923. She further testifies she "knows nothing in the world" about Judge Cham Jones having set the judgment aside.

At the request of counsel for defendants the court made certain findings of fact, which are substantially the facts here set forth and disclosed by the record. The court made the following conclusion of law:

"Upon the facts above stated, the court therefore concludes as a matter of law that there has been no competent evidence introduced before the court which shows that the default judgment rendered in said cause on the 5th day of April, 1923, was ever set aside."

The opinion of the court being that a judgment of a court of record cannot be set aside or impeached by oral testimony. The court thereupon overruled the motion to recall the execution and ordered the sheriff to sell the property levied upon, and from the order overruling the motion, defendants appeal.

Counsel for defendants devotes considerable space to citation of authorities to the effect that a court of general jurisdiction has control over orders or judgments during the term at which made, and for sufficient cause may modify or set them aside at that term, and when so set aside, the parties are remitted to such rights and remedies as they formerly had, the same as though the order or judgment vacated had not been made in the first instance. This is conceded and is too well settled to require the citation of authorities, and the question does not enter into this case. The questions here are, Did the court exercise this unquestioned power, and did defendants introduce sufficient competent testimony to prove the court made an order vacating the judgment and granting leave to defendants to file an answer instanter? The evidence of the court clerk is of no value to defendants, for she has "no recollection in the world" of such an order being made, and while her deputy filed the answer, it is well known that clerks will file any pleading presented by counsel and rely upon opposing counsel to present the irregularity of the filing to the court. The letter of the former judge simply states what his practice was, but he further states that he has no recollection of what order, if any, he made in this particular case. He only knows these defendants had numerous cases in his court, and counsel appeared, and the former judge will not say that he made any order in any of the cases against these defendants. Timely objection to the introduction of the letter having been made, the same was incompetent for any purpose. This leaves only the verified motion of counsel for defendants, and while he states under oath in the first motion that he appeared on April 12, 1923, in open court and

had the judgment vacated, when it appeared the court adjourned on April 9th and was not in session on April 12th, he states under oath in his second motion that he is unable to state the exact date he appeared in open court and moved the vacation of the judgment, and it is no reflection upon the integrity of counsel to say that his recollection is rather hazy upon this point. It is not denied that counsel, after filing the answer, put the same in his pocket and it never came to light until after the alias execution was issued and it was there discovered it was unverified, and constituted no defense to the action in that form. Section 287, Comp. St. 1921, provides:

"In all actions, allegations of the execution of written instruments and indorsements thereon * * * shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

The answer was not verified until December 13, 1923, or 8 months after the filing of the answer, and as it was never in the files of the court, counsel for plaintiff had no means of knowing whether it was verified or not, even had he desired to move for judgment on the pleadings for lack of verification of the answer.

Defendants cite Sackett v. Rose, 55 Okla. 398, 154 Pac. 1177, to the effect that:

"The alteration of a record may be shown by parol evidence; such evidence not being within the rule excluding evidence to vary the record, but for the purpose of showing that the record in question is not the true record that was actually made."

The cited case was one in which it was alleged an abstractor had omitted a record of a certain judgment recorded on February 23, 1909. The abstract was extended March 18, 1909, and the record was changed to show the judgment was recorded July 23, 1909, which date, if true, would absolve the abstractor from liability, and oral evidence was admitted to show the change. No such question arises in the case under review. Here there is an attempt to supply a record where none exists. Defendants attempt to inject into the record a motion and order on which the record is silent. Defendants have not exercised any great degree of diligence in protecting their record. After having a default judgment rendered against them, they made no effort to supply the record by nunc pro tunc order, and whether this remedy was available or not in the instant case we are not called upon to determine. Certainly they waited from April 12th to December 13th without making any effort to correct the record, and then do not move to correct the record, but simply pray that the execution be recalled, and submit their case upon their own affidavit. It is the duty of counsel to make timely examinations of the journals of the court, and see that the record correctly recites the proceedings, and if they have objections, to present the same to the court by proper motion, and have the records corrected or the omissions supplied. Boynton et al. v. Crockett et al., 12 Okla. 57, 69 Pac. 869. If timely action had been taken, no doubt this record could have been perfected, for the courts of record of this state have power to correct a mistake of the clerk in the entry of a judgment or order on the journal so as to make the same conform to the judgment actually pronounced or the order actually made by the court at the time. The correction may be made by an amendment after the term at which the judgment or order was pronounced or the entry was made, upon motion of a party, and upon reasonable notice to the opposite party, and opportunity to appear and show cause against the proposed correction. Such amendment may be based on any competent evidence, parol as well as written, which is satisfactory and convincing. Record evidence or evidence quasi of record is not essential, but where there is not such evidence, the court should act with great care and caution. Jones v. Gallagher, 64 Okla. 41, 166 Pac. 204.

We think Black on Judgments (2nd Ed.) section 165, correctly states the modern rule as follows:

"The rule that a record can only be amended by matter of record seems to rest, in the last analysis, upon the rule that a record imparts absolute verity. Without losing sight of the extreme importance of securing stability and authority to the solemn memorials of the courts, we may still conceive that this rule if applied with full vigor and severity, might in many cases produce the greatest hardship and injustice. But it is evident to a student of American case law that we are gradually working away from the old standards in this respect. The courts are more and more disposed to a liberal practice and to look to the full and perfect administration of justice, rather than to buttress up the sanctity of the records by forbidding inquiry into their truth."

"Hence it is not improbable that the policy of permitting judgments to be amended upon cause shown by any proper and satisfactory evidence will ultimately prevail.

Certainly it is a policy commended by reason and justice, and still more by the loose way in which the records of our courts are but too frequently made up.

"To shut out any light which could help to make the records accurate, complete, and right in themselves appears to show a too superstitious reverence for the litera scripta."

The cases so far examined are predicated upon a record of some character, but in the instant case there is a complete absence of any record, and we are inclined to the rule laid down in Black on Judgments, section 135, as follows:

"But a general balance of authority seems to be with the cases, holding that so far as concerns the question whether a judgment was ever rendered, that fact must be established by record evidence, and cannot be proved by parol—a rule which, if conservative, is also entirely safe."

If there was any entry, the same might be corrected by oral testimony, and the rule laid down by the court in Co-wo-ko-chee v. Chapman 76 Okla. 1, 183 Pac. 610, would apply. In that case it was said:

"The court wherein a judgment is entered, in furtherance of justice and for the purpose of making its records speak the truth, may proceed to correct the same on any evidence satisfactory to itself, whether oral or documentary, record or otherwise, and it is for the court to say what is the kind and amount of evidence requisite to show that the amendment should be made, but where there is no record, or quasi record, evidence, the court should act with great care and caution."

We entertain grave doubts that a nunc pro tunc order to supply a record where none exists could be sustained upon, to wit, the unsupported affidavit of the defendants' counsel.

Mr. Elliott, in his Appellate Procedure, section 213, says:

"We have concluded, upon examination of our own, and other cases, that the true rule is that while parol evidence is competent, it is not of itself, unaided by any other note, minute or memorial, sufficient to authorize a nunc pro tunc order. It may be competent, and yet insufficient. It would certainly violate the rule laid down in a long line of cases to hold that parol evidence is all that is required." Hamilton v. Burch, 28 Ind. 233; Seig v. Long, 72 Ind. 18; Kirby v. Bowland, 69 Ind. 290—cited with approval in Bank of Kingfisher v. Smith, 2 Okla. 6, 35 Pac. 955.

Having reached the conclusion that the evidence introduced was not of sufficient weight and cogency to warrant the court in recalling the execution and order of sale, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 23 C. J. p. 545, § 432, (2) 34 C. J. pp. 228, § 449, 247, § 474. (3) 23 C. J. p. 545, § 432.